IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MIDSHIPMAN LANCE BARNES, et al. ) | |
| ) | |
| Plaintiffs, ) | CA No. 94 0261 (HHG) |
| v. ) | |
| ) | FILED |
| HONORABLE JOHN DALTON, SECRETARY ) | |
| OF THE NAVY, et al. ) | FEB 1 6 1994 |
| ) | |
| Defendants. ) | CLERK, U.S. DISTRICT COURT |
| ) | DISTRICT OF COLUMBIA |

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
## PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER

Plaintiffs filed before this Court a Motion for a
Temporary Restraining Order on February 10, 1993.
Contemporaneously, plaintiffs filed a complaint seeking
declaratory and injunctive relief.  On February 14, 1994, the
parties executed a stipulation which converted plaintiffs' motion
to a Motion for Preliminary Injunction and set a briefing
schedule and date for hearing on the motion.  The parties'
stipulation provided that the hearing on the now-converted motion
will be conducted on February 22, 1994.  This memorandum
supplements the memorandum filed contemporaneously with
Plaintiffs' Motion for Temporary Restraining Order.

### BACKGROUND

Plaintiffs' Motion for Temporary Restraining Order
alleges, first, that the procedures of the Allen Boards
circumvent the statutory procedures for separating midshipmen

— 1 —

found in 10 U.S.C. § 6962.  Second, that the evidence to be
admitted in Honor Review Boards ("Allen Boards") created by the
Chief of Naval Operations is tainted because the Navy Inspector
General Investigators consciously disregarded the Article 31 and
Fifth Amendment right of plaintiffs to remain silent and to have
counsel present during their interrogations concerning the
compromise of the EE 311 examination.  Third, plaintiffs allege
that the procedures instituted for the Allen Boards violate
plaintiffs' right to due process under the Fifth Amendment.  The
information which follows supports the second and third claims
raised by plaintiffs.

### The Navy Violated Article 31

In support of plaintiffs' allegations that their
Article 31 rights were consciously and knowingly violated,
plaintiffs offer the evidence, affidavits of 10 representative
midshipmen, attached at Exhibit A.  Further, plaintiffs offer the
affidavit of Brigadier General David Brahms, USMC (Ret.), an
expert in military law, in support of their allegation that the
conduct of the Navy, and the Inspector General investigators in
particular, was contrary to law and violative of the plaintiffs'
rights.  (Exhibit B) (Due to time constraints, plaintiffs have
filed a facsimile of General Brahms' affidavit.  The original
will be substituted when received by counsel).

### The Allen Boards Deny Plaintiffs Due Process

The Allen Board written precepts from the Chief of
Naval Operations purport to provide the midshipmen appearing

before them certain "rights."  These "rights" are illusory and
have been eviscerated by the actual process being followed by the
Board.

Under the Allen Board precepts, defendants purport to
grant to plaintiffs the right to call witnesses on their behalf
who are reasonably available and at no cost to the Government.
Military counsel for plaintiffs sought the assistance of EE 311
instructors at the Naval Academy to testify concerning the
examination on which plaintiffs are alleged to have cheated.  The
Chairman of the Electrical Engineering Department summarily
denied counsel's request, despite the fact that EE instructors'
testimony was presented to the Edney Board which made the
recommendations as to which midshipmen would ultimately face the
Allen Board.  (Exhibit C).

Plaintiffs will be prepared to offer the testimony of
Lieutenant Commander King, who prepared Exhibit C, at the hearing
on the Preliminary Injunction.

For the reasons stated in plaintiffs' original
memorandum, and supplemented herein, plaintiffs request that this
Court enter a preliminary injunction enjoining the Allen Boards
until plaintiffs have had a hearing on the merits of their
claims.

Respectfully submitted,

**WILLIAMS & CONNOLLY**

By: _____
    Steven M. Umin
      (D.C. Bar # 47985)
    Charles W. Gittins
      (D.C. Bar # 439710)
    Eric J. Moss
      (D.C. Bar # 436127)
    Lori Jonas
      (D.C. Bar # 436916)

   725 Twelfth Street, N.W.
   Washington, D.C.  20005
   (202) 434-5000

Counsel for Plaintiffs

DATED: February 16, 1994

— 4 —



*Exhibit A*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MIDSHIPMAN LANCE BARNES, <u>et al.</u> | ) |
| | ) |
| Plaintiffs | )    CA No. 94 0261 (HHG) |
| v. | ) |
| | ) |
| HONORABLE JOHN DALTON, | ) |
| SECRETARY OF THE NAVY, <u>et al.</u> | ) |
| | ) |
| Defendants. | ) |

**FILED**

**FEB 1 6 1994**

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

### AFFIDAVIT OF JASON BERGER

1.    I am over 18 years of age and am competent to testify to all matters set forth in this affidavit.  This affidavit is based on my personal knowledge of the matters set forth.

2.    I am a Midshipman First Class at the United States Naval Academy, scheduled to graduate and receive my commission on May 25, 1994.

3.    I am the President of the Class of 1994.  I have maintained a 2.84 grade point average over three and one half years at the Academy.  I have been involved in 3 years of wrestling, 2 years of Navy Powerlifting (attended Nationals last year), and was Secretary of the Class of 1994 my junior year.

4.    In addition, I have been involved in a number of outside activities related to the Naval Academy.  As President of the Class, I am ultimately responsible for managing class funds of up to $18,000.  Further, I have been actively involved with

State and Academy officials by establishing on my own a memorial fund for three of my school mates who were killed in a car accident in Maryland on the return from last year's Army-Navy game. I have had no demerits in my three years at the Naval Academy.

5.    On August 24, 1993, I was ordered to an interview with the Navy Inspector General.

6.    When I arrived, I was immediately threatened with perjury by the civilian attorney, William C. Kellum, and made to take an oath by Major Timothy Hewitt. I was questioned for approximately one and one-half hours.

7.    At no time was I informed of my right to remain silent or my right to counsel.

8. Because the hour was getting late, the interrogation was stopped after 1 1/2 hours and I was told to return the next day to sign my statement.

9.    When I returned on August 25, 1994, I was presented with a statement that had been drafted by the investigators. I refused to sign this statement. I then told Major Hewitt that I did not want to sign the statement without first showing it to a lawyer. He left the room and returned within individual whom I believe was the head attorney, Mr. O'Brien. They placed the statement in front of me and told me that I had no choice but to sign the statement. I did not read or sign the statement. I refused.

10.    We argued at length about my right to counsel.

- 2 -

11.  I was threatened by Mr. O'Brien that if I did not sign the statements, they would all testify against me at a court-martial.  I never signed the statement, nor did I agree that anything in it was accurate.  Nonetheless, when I was provided my Board package, that unsigned statement was in the package as evidence against me.

                                                       Jason Berger

Subscribed and sworn to before me this 14th day of February, 1994.

Notary Public

My Commission expires:  2/14/98

MOIRA K. RICKETTS
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires February 14, 1998

- 3 -

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
                                    )
MIDSHIPMEN LANCE BARNES,             )
PETER BARBOUR, JASON BERGER,         )
JOEL N. BARTIS, MARK D. BORAN,       )
DAVID A. CHLEBNIK, CHRISTOPHER       )
CLAIBORNE, JEFFREY D. CLARK,         )
DANIEL COLPO, JAMES NIXON SHERROD,   )
DAVID J. DERMODY, GARRY M.           )    C.A. No.: 94 0261 (HHG)
DEVINGER, SETH EVANS, JOHN           )
FORMOSO, HENRY FULTON III,           )
ROBERT E.F. GENTRY, MATTHEW          )
GIBSON, BRIAN D. GRAVES, DAVID E.    )
GWINN, JEFFREY GANTAR, KEVIN P.      )
HAMILTON, KEVIN W. HAVENS,           )
JUSTIN JONES-LANTZY, JASON           )
HEDBERG, DUNCAN N. INGRAHAM, JR.,    )
NEIL P. KEEGAN, PAUL R. KOCHER,      )
CHRISTOPHER KUZNIEWSKI,              )
D. WILSON MARKS, ERIC P.             )
MITCHELL, COLIN M. O'BRIEN,          )
EDWARD O'NEILL, ANDREW PAYNE,        )
DANIEL PIDGEON, TIMOTHY J. QUEEN,    )
SEAN W. QUINN, THOMAS ROSZKO,        )
STEVEN E. SCHAIRER, MARK E.          )
SCHNEIDER, BLAIR SOKOL,              )
LEWIS B. SIMS, ANDREW SOTERAKIS,     )
DERRICK TEFF, JEFFREY STEPANIC,      )
DAVID B. STOWERS, BRYAN SZELIGA,     )
JASON VAN MATRE, and                 )
JAVIER ZULUAGA, USN,                 )
                                     )
            Plaintiffs               )
                                     )
        v.                           )
                                     )
HONORABLE JOHN DALTON,               )
ADMIRAL FRANK B. KELSO, USN,         )
REAR ADMIRAL THOMAS C. LYNCH, USN,   )
REAR ADMIRAL RICHARD ALLEN, USN,     )
                                     )
            Defendants.              )
                                     )
```

AFFIDAVIT OF HARRY FULTON III

1.   I am over 18 years of age and am competent to testify to all matters set forth in this affidavit.  This affidavit is based on my personal knowledge of the matters set forth.

2.   I am a Midshipman First Class at the United States Naval Academy, scheduled to graduate and receive my commission on May 25, 1994.

3.   I have been very active in intramural sports at the Academy, including coaching my company's teams.  I am a member of the French and ski clubs.

4.   On August 19, 1993, I received notice to meet later that day with the Navy Inspector General in a room in Nimitz Library.  Cdr. McPartlin USN and NIS agent Debby Reese were present in the room when I arrived.

5.   When I first arrived, I was forced to take an oath to tell the truth.  I was not advised that I had the right to remain silent or that I had the right to consult with or be represented by counsel.

6.   The investigators asked me to tell them what happened on the night of December 13, 1993.  In response, I gave them a brief statement.

7.   I then asked if I could speak to my roommate, who I knew to be in the next room.  I was told that I could not.

8.   My statement was typed up.  Before asking for my signature, I was warned that if it was not true, I could be prosecuted under the UCMJ for perjury.

9.  I was then told that they had five written statements that they intended to use against me.  At this point, I asked again if I could speak to my roommate.  Again, I was told that I could not.

10.  At this point, I attempted to remain silent.  I was told that I had to sign a statement.  I was told that by remaining silent, I could be prosecuted under UCMJ for interfering with a federal investigation.  The investigators then told me that I could go to prison for perjury or for interfering with an investigation.

11.  After being threatened with prosecution, I made some additional statements that met more with their approval.  These statements were then typed up for my signature.

12.  When the statement was presented to me, I asked if I could consult with anyone (including my parents) before I signed it.  I was told "no," that I had to sign it then and there.  Although the statement was incomplete, I signed it.  I felt that I had no choice but to sign it.

13.  After I signed my statement, I was questioned about the involvement of two other midshipmen.  I refused to answer this question.  I was told that I should go back and tell these two midshipmen that they should come forward voluntarily or they would be called in.  I did what was requested.  The whole meeting lasted close to four hours.

14.  The next day, I returned with these two midshipmen.  We were separated as soon as we arrived.  I then

went through another interrogation session with Cdr. McPartlin and Ms. Reese.  Once again, I was not informed of any rights. This meeting lasted 1-2 hours.

      15.  Once again, a statement was presented for my signature and I felt compelled to sign it.

                                                    Harry Fulton, III

Subscribed and sworn to before me
this 14th day of February, 1994.

Moira K. Ricketts
Notary Public

My Commission expires: 2/14/98

MOIRA K. RICKETTS
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires February 14, 1998

- 4 -

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____  )
                                )
MIDSHIPMEN LANCE BARNES,         )
PETER BARBOUR, JASON BERGER,     )
JOEL N. BARTIS, MARK D. BORAN,   )
DAVID A. CHLEBNIK, CHRISTOPHER   )
CLAIBORNE, JEFFREY D. CLARK,     )
DANIEL COLPO, JAMES NIXON SHERROD, )
DAVID J. DERMODY, GARRY M.       )   C.A. No.: 94 0261 (HHG)
DEVINGER, SETH EVANS, JOHN       )
FORMOSO, HENRY FULTON III,       )
ROBERT E.F. GENTRY, MATTHEW      )
GIBSON, BRIAN D. GRAVES, DAVID E. )
GWINN, JEFFREY GANTAR, KEVIN P.  )
HAMILTON, KEVIN W. HAVENS,       )
JUSTIN JONES-LANTZY, JASON       )
HEDBERG, DUNCAN N. INGRAHAM, JR., )
NEIL P. KEEGAN, PAUL R. KOCHER,  )
CHRISTOPHER KUZNIEWSKI,          )
D. WILSON MARKS, ERIC P.         )
MITCHELL, COLIN M. O'BRIEN,      )
EDWARD O'NEILL, ANDREW PAYNE,    )
DANIEL PIDGEON, TIMOTHY J. QUEEN, )
SEAN W. QUINN, THOMAS ROSZKO,    )
STEVEN E. SCHAIRER, MARK E.      )
SCHNEIDER, BLAIR SOKOL,          )
LEWIS B. SIMS, ANDREW SOTERAKIS, )
DERRICK TEFF, JEFFREY STEPANIC,  )
DAVID B. STOWERS, BRYAN SZELIGA, )
JASON VAN MATRE, and             )
JAVIER ZULUAGA, USN,             )
                                 )
            Plaintiffs            )
                                 )
     v.                          )
                                 )
HONORABLE JOHN DALTON,           )
ADMIRAL FRANK B. KELSO, USN,     )
REAR ADMIRAL THOMAS C. LYNCH, USN, )
REAR ADMIRAL RICHARD ALLEN, USN, )
                                 )
            Defendants.           )
_____  )
```

AFFIDAVIT OF JENNIFER A. GRAVES

CITY OF WASHINGTON          )
                            ) ss:
DISTRICT OF COLUMBIA        )

     1.   I am over 18 years of age and am competent to testify to all matters set forth in this affidavit.  This affidavit is based on my personal knowledge of the matters set forth.

     2.   I am a Midshipman First Class at the United States Naval Academy, scheduled to graduate and receive my commission on May 25, 1994.

     3.   I am an English major.  I am on the varsity in cross-country in-door and out-door track teams.

     4.   Prior to the allegations made in regards to the 311 EE examination, I have never been the subject of an honor board report.

     5.   I was called back from leave and interviewed by the Navy Inspector General's Office on August 2-3, 1993, concerning the compromise of the EE 311 exam.

     6.   During the first day of questioning, I was interrogated from 7:00 am until approximately 5:00 pm, with only one break for lunch.  At the end of the day, I signed a statement and was told to come back the next day at 7:30 am.  The investigators told me that I would be called in every day until I told the truth and that I would be on "stand-by" so I could not attend a previously scheduled family vacation.

7.  The next day, after waiting for an hour and a half, I was led to a small room where I then had to wait for an additional two and a half hours, only to be dismissed for the lunch break.  Following the lunch break, I was questioned for three or four hours.

8.  I asked the investigators if I was being accused of cheating and I was told that I was not.  I also asked if I needed a lawyer and was told "no."  Later in the questioning I asked repeatedly for a lawyer, but the investigators informed me that because this was an administrative procedure I did not have the right to counsel.

9.  At one point I got up and tried to leave, stating that I was most certainly being accused and that I would come back with a lawyer.  The investigators yelled at me and told me that I could not leave.  I felt intimidated.

10.  The investigators lied to me throughout the process.  They told me that I scored the same as my roommate on the examination, seventy eight percent correct.  In fact, my actual score was only sixty eight percent.

11.  The investigators asked questions regarding my personal life that are unrelated to the 311 EE exam.  They put-up a picture of my boyfriend in the interview room during the course of the interview.  The investigators printed out my E-mail for the entire year, not just the period near the examination.  The investigators asked me personal questions about my boyfriend and laughed at our messages.  Since one or more messages included

alcohol stories, one of the investigators gave me a speech about alcohol abuse, alcoholism, etc.  She told me conduct action could be taken against me because I was only twenty years old at the time.  The investigators repeatedly told me that "people like you make them sick."

12.  The investigators found-out that members of my family had served in the military.  They said that I was an embarrassment to my family.

13.  The investigators told me to stop lying and that I was going to end-up in Leavenworth for perjury.  They warned me that if I did not start talking, I would be court-martialed and separated from the academy.

14.  After the second day of questioning, I retained a lawyer.  The lawyer contacted the Navy, and I was not questioned any further.

_Jennifer A. Graves_
Jennifer A. Graves


Subscribed and sworn to before me this 14th day of February, 1994.

_Moira K. Ricketts_
Notary Public

MOIRA K. RICKETTS
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires February 14, 1998

My Commission expires: 2/14/98

- 4 -

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MIDSHIPMEN LANCE BARNES,                )
PETER BARBOUR, JASON BERGER,            )
JOEL N. BARTIS, MARK D. BORAN,          )
DAVID A. CHLEBNIK, CHRISTOPHER          )
CLAIBORNE, JEFFREY D. CLARK,            )
DANIEL COLPO, JAMES NIXON SHERROD,      )      C.A. No.: 94 0261 (HHG)
DAVID J. DERMODY, GARRY M.              )
DEVINGER, SETH EVANS, JOHN              )
FORMOSO, HENRY FULTON III,              )
ROBERT E.F. GENTRY, MATTHEW             )
GIBSON, BRIAN D. GRAVES, DAVID E.       )
GWINN, JEFFREY GANTAR, KEVIN P.         )
HAMILTON, KEVIN W. HAVENS,              )
JUSTIN JONES-LANTZY, JASON              )
HEDBERG, DUNCAN N. INGRAHAM, JR.,       )
NEIL P. KEEGAN, PAUL R. KOCHER,         )
CHRISTOPHER KUZNIEWSKI,                 )
D. WILSON MARKS, ERIC P.                )
MITCHELL, COLIN M. O'BRIEN,             )
EDWARD O'NEILL, ANDREW PAYNE,           )
DANIEL PIDGEON, TIMOTHY J. QUEEN,       )
SEAN W. QUINN, THOMAS ROSZKO,           )
STEVEN E. SCHAIRER, MARK E.             )
SCHNEIDER, BLAIR SOKOL,                 )
LEWIS B. SIMS, ANDREW SOTERAKIS,        )
DERRICK TEFF, JEFFREY STEPANIC,         )
DAVID B. STOWERS, BRYAN SZELIGA,        )
JASON VAN MATRE, and                    )
JAVIER ZULUAGA, USN,                    )
                                        )
            Plaintiffs                  )
                                        )
       v.                               )
                                        )
HONORABLE JOHN DALTON,                  )
ADMIRAL FRANK B. KELSO, USN,            )
REAR ADMIRAL THOMAS C. LYNCH, USN,      )
REAR ADMIRAL RICHARD ALLEN, USN,        )
                                        )
            Defendants.                 )

AFFIDAVIT OF ROBERT E.F. GENTRY

       1.  I am over 18 years of age and am competent to
testify to all of the matters set forth in this affidavit.  This

affidavit is based on my personal knowledge of the matters set forth.

2.  I am a Midshipman First Class at the United States Naval Academy, scheduled to graduate and receive my commission on May 25, 1994.

3.  I am a history major and captain of the varsity intercollegiate sailing team.

4.  Prior to the events described in this affidavit, I have never been investigated for my conduct or my honor.

5.  During June 1993, while I was in summer training at the Norfolk, Virginia Naval base, I was called to return to the Naval Academy in Annapolis, Maryland.  I returned to the Academy that day.

6.  When I returned, Lt. Caan told me to report to his office and sit there from 8:00 a.m. until 5:00 p.m. every day until I was called for questioning on the EE 311 exam.  I stayed in the office for two or three consecutive days before being called in for interviews.

7.  On June 25, 1993, I was called into a room where three or four civilians and one officer were present.  They said they were from the Navy Inspector General's Office.  I was told that I had no rights except to tell the truth.  I was told I had no right to counsel, no right not to incriminate myself, and no right not to speak with them.  They told me they were tape recording our discussion and turned on a tape machine.  I believe

477e4ba832b41f73

that they stopped the machine when they were speaking, and turned it back on when I spoke.

8.  At this June 25 meeting, I was asked repeatedly what I knew about the compromise of the EE 311 exam. They told me that football players and others from the Naval Academy Preparatory School (NAPS), had cheated on the exam. During this meeting, the IG investigators were offensive. They yelled at me and said, among other things, "All you fucking NAPSters are dirtbags." The meeting lasted for approximately one hour.

9.  I was ordered to report to Lt. Caan's office and remain there all day on June 26, 1993 and June 27, 1993. There was no further questioning on those days.

10.  On September 7, 1993, the Inspector General's office called me back and ordered me to report for another interview. A Major Hewitt and another civilian were present. I was told that I had no rights to counsel or to remain silent. I was also told that if I lied I would be "thrown out of the Academy and sent to Leavenworth to bust rocks."

11.  At this interview, Major Hewitt and the other person asked me about the night before the EE 311 exam. They showed me what appeared to be a copy of my exam, and told me they knew I had cheated. They screamed and cursed at me. They told me they "knew I had the fucking exam," that I was "a lying sack of shit." They told me that the only thing I would be doing in the future was "scrubbing floors at McDonalds."

12.  At the conclusion of the interview, I was presented with a statement of what I had supposedly said, and told to sign it.  I was told I could not leave the room until I had signed the statement.  I signed the statement even though I knew it was not accurate so that I could leave.  I had arrived at approximately 7:45 a.m., and was not permitted to leave until 12:15 p.m.

13.  In November 1993, I was again called in for another meeting on the EE 311 exam.  I was again told at the outset that I had no rights.  The investigator maintained that I was still lying.  I told him I didn't know anything about the individuals he was asking about.  The investigator told me to stop lying.  This meeting lasted approximately 30 minutes.

14.  On February 7, 1994 I was given a written statement of what I supposedly had said at the June 25 meeting.  This statement contained remarks that I did not make.  This was the first time I had seen this statement.

_Robt E.F. Gentry_
Robert E.F. Gentry

Subscribed and sworn to before me this 14th day of February, 1994.

_Moira K. Ricketts_
Notary Public

My Commission expires: 2/14/98

MOIRA K. RICKETTS
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires February 14, 1998          - 4 -

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                    )
MIDSHIPMEN LANCE BARNES,            )
PETER BARBOUR, JASON BERGER,        )
JOEL N. BARTIS, MARK D. BORAN,      )
DAVID A. CHLEBNIK, CHRISTOPHER      )
CLAIBORNE, JEFFREY D. CLARK,        )
DANIEL COLPO, JAMES NIXON SHERROD,  )
DAVID J. DERMODY, GARRY M.          )    C.A. No.: 94 0261 (HHG)
DEVINGER, SETH EVANS, JOHN          )
FORMOSO, HENRY FULTON III,          )
ROBERT E.F. GENTRY, MATTHEW         )
GIBSON, BRIAN D. GRAVES, DAVID E.   )
GWINN, JEFFREY GANTAR, KEVIN P.     )
HAMILTON, KEVIN W. HAVENS,          )
JUSTIN JONES-LANTZY, JASON          )
HEDBERG, DUNCAN N. INGRAHAM, JR.,   )
NEIL P. KEEGAN, PAUL R. KOCHER,     )
CHRISTOPHER KUZNIEWSKI,             )
D. WILSON MARKS, ERIC P.            )
MITCHELL, COLIN M. O'BRIEN,         )
EDWARD O'NEILL, ANDREW PAYNE,       )
DANIEL PIDGEON, TIMOTHY J. QUEEN,   )
SEAN W. QUINN, THOMAS ROSZKO,       )
STEVEN E. SCHAIRER, MARK E.         )
SCHNEIDER, BLAIR SOKOL,             )
LEWIS B. SIMS, ANDREW SOTERAKIS,    )
DERRICK TEFF, JEFFREY STEPANIC,     )
DAVID B. STOWERS, BRYAN SZELIGA,    )
JASON VAN MATRE, and                )
JAVIER ZULUAGA, USN,                )
                                    )
              Plaintiffs            )
                                    )
      v.                            )
                                    )
HONORABLE JOHN DALTON,              )
ADMIRAL FRANK B. KELSO, USN,        )
REAR ADMIRAL THOMAS C. LYNCH, USN,  )
REAR ADMIRAL RICHARD ALLEN, USN,    )
                                    )
              Defendants.           )
_____)
```

AFFIDAVIT OF MATTHEW GIBSON

```
CITY OF WASHINGTON          )
                            )ss:
DISTRICT OF COLUMBIA        )
```

     1.    I am over 18 years of age and am competent to testify to all matters set forth in this affidavit.  This affidavit is based on my personal knowledge of the matters set forth.

     2.    I am a Midshipman First Class at the United States Naval Academy, scheduled to graduate and receive my commission on May 25, 1994.

     3.    I have maintained a  2.5 grade point average over three and one half years at the Academy.  I have been involved in intramural sports at the Academy and have been active in my church.

     4.    On September 14, 1993, I received notice to meet with the Navy Inspector General in a room in Alumni Hall.  Cdr. McPartlin USN and NIS agent Debby Reese were present in the room.

     5.    Soon after I arrived, the conversation turned to the EE311 exam and the Cdr. said, "we know how it got to your room."

     6.    I specifically requested the assistance of an attorney and was told that I had no right to a lawyer.  I was not informed of a right to remain silent.  In fact, I was specifically told that I had no right not to answer the questions posed.

7.    Because I had heard from other midshipmen that the IG investigators try to trick you into making inaccurate statements, I wanted a record of what I had said.  Thus, I began to take notes of the conversation.  The Cdr said, "Give me that piece of paper."  I responded, "Sir, I'm just trying to keep my own record."  The Cdr. repeated that he wanted the paper.  I asked, "Sir, are you sure you have the authority to do that?"  The Cdr. became very angry, leaned forward in his chair so that our faces were very close and yelled, "Do you see these bars on my shoulder?  Look at your insignia and then look at mine and tell me if I have the authority to do it!"  I responded, "Sir, those are commander's bars, but it is my understanding that you are here to gather facts unbiased, regardless of rank."  I asked if he would physically stop me from leaving with the paper.  He responded, "That's right."

8.    At this point, I turned to Ms. Reese and asked her to acknowledge that she had witnessed what had just happened.  She stated, "I did, Mr. Gibson."

9.    Cdr. McPartlin then made a speech in which he told me that I would never be anything in life, no college would accept me if I didn't come forward right now, that I would be flipping burgers the rest of my life, that my parents would never accept me back, that I would owe the government an enormous amount of money, and that I was a liar and a cheat.

10.    Cdr. McPartlin and Agent Reese told me that they knew my role was minimal, that I had not bought the test, or

sought it out. They repeatedly said, "Confess and you'll save your career. Otherwise, you are in trouble."

11. After about an hour and a half had elapsed, I was presented with a statement to sign. I was never given the opportunity to write my own statement.

12. I made corrections to the statement, including crossing out the statement that I indicated that I was not under duress. I specifically did feel that I was under duress. I did not want to make a statement until I knew my rights, plain and simple.

13. The statement I signed on September 14 indicated that I had not been involved in the scandal and didn't see any illegal gouge. I was told by the Cdr. and Ms. Reese that if I came in the next day, I could make a new statement as an amendment to this one. They specifically told me that if I voluntarily came in the next day to make a new statement, the old one would <u>not</u> be used against me.

14. The next day, I came in with a statement that I had written myself which indicated that I had seen a few problems on a scrap of paper, but I did not know that they were from a stolen EE test. My statement indicated everything I knew about the scrap of paper and I why I had not come forward.

15. Cdr. McPartlin disregarded my statement and began questioning me again. Again in this interrogation, Cdr. McPartlin did not read me my rights or tell me I was entitled to an attorney.

16.   Cdr. McPartlin left the room and came back an hour and a half later with another prepared statement.  I made him re-write it several times.  Nonetheless, the statement contained inaccuracies that were never corrected, although I pointed them out.  The last time I pointed out an error, Cdr. McPartlin told me I better sign it or he would take out anything "good" it said.  By this time, it had been several hours.  Ultimately, the statement put words in my mouth that were not my own.

_Matthew Gibson_
Matthew Gibson

Subscribed and sworn to before me
this 14th day of February, 1994.

_Moira K. Ricketts_
Notary Public

My Commission expires:  2/14/98

MOIRA K. RICKETTS
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires February 14, 1998

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MIDSHIPMEN LANCE BARNES,          )
PETER BARBOUR, JASON BERGER,      )
JOEL N. BARTIS, MARK D. BORAN,    )
DAVID A. CHLEBNIK, CHRISTOPHER    )
CLAIBORNE, JEFFREY D. CLARK,      )
DANIEL COLPO, JAMES NIXON SHERROD,)
DAVID J. DERMODY, GARRY M.        )       C.A. No.: 94 0261 (HHG)
DEVINGER, SETH EVANS, JOHN        )
FORMOSO, HENRY FULTON III,        )
ROBERT E.F. GENTRY, MATTHEW       )
GIBSON, BRIAN D. GRAVES, DAVID E. )
GWINN, JEFFREY GANTAR, KEVIN P.   )
HAMILTON, KEVIN W. HAVENS,        )
JUSTIN JONES-LANTZY, JASON        )
HEDBERG, DUNCAN N. INGRAHAM, JR., )
NEIL P. KEEGAN, PAUL R. KOCHER,   )
CHRISTOPHER KUZNIEWSKI,           )
D. WILSON MARKS, ERIC P.          )
MITCHELL, COLIN M. O'BRIEN,       )
EDWARD O'NEILL, ANDREW PAYNE,     )
DANIEL PIDGEON, TIMOTHY J. QUEEN, )
SEAN W. QUINN, THOMAS ROSZKO,     )
STEVEN E. SCHAIRER, MARK E.       )
SCHNEIDER, BLAIR SOKOL,           )
LEWIS B. SIMS, ANDREW SOTERAKIS,  )
DERRICK TEFF, JEFFREY STEPANIC,   )
DAVID B. STOWERS, BRYAN SZELIGA,  )
JASON VAN MATRE, and              )
JAVIER ZULUAGA, USN,              )
                                  )
          Plaintiffs              )
                                  )
     v.                           )
                                  )
HONORABLE JOHN DALTON,            )
ADMIRAL FRANK B. KELSO, USN,      )
REAR ADMIRAL THOMAS C. LYNCH, USN,)
REAR ADMIRAL RICHARD ALLEN, USN,  )
                                  )
          Defendants.             )

AFFIDAVIT OF DAVID E. GWINN

1.    I am over 18 years of age and am competent to testify to all matters set forth in this affidavit.  This affidavit is based on my personal knowledge of the matters set forth.

2.    I am a Midshipman First Class at the United States Naval Academy, scheduled to graduate and receive my commission on May 25, 1994.

3.    I have maintained a 3.47 grade point average over three and one half years at the Academy.  I had a high "A" average going into the EE 311 exam, and only needed to get a "D" on the final exam to receive an "A" in the course.

4.    I am a computer science/pre-medical school major. I have been accepted to Medical School, and am scheduled to begin classes on August 27, 1994.

5.    Prior to the allegations made in regards to the EE 311 exam, I have never been the subject of an honor board report.

6.    On September 14, 1993, I was called in for an interview with the Navy Inspector concerning the compromise of the EE 311 exam.  Two people were present: William Kellum and CDR Thompson.

7.    The investigators spoke to me in a condescending tone.  Mr. Kellum said "oh come on Mr. Gwinn, I know how it is with the sports teams, if one of you have it, all of you have it."  He also went into a monologue about protecting my fellow teammates and that I was going to go down with them if I did not talk.

8.  Within the first hour of the interview, I requested and was denied the right to write down notes concerning the dialogue.  I also asked for and was denied the right to counsel. I was further told that I did not have the right to remain silent.

9.  The interviewers became increasingly angered over the duration of my interview and proceeded to take shots at my personal life.  On numerous occasions I was told that I could "forget about practicing medicine," and that I "was ruining any career opportunities" that I might pursue.

10.  At one point in the interview, Mr. Kellum said, "you should start strengthening your wrist to flip burgers," because "that was the only job you will be able to hold down."

11.  The next day, I made a statement to Mr. Kellum. He included assertions in the statement that were false.  When I told him to take them out, he said as he sees it, "it's the truth" and he refused to take the statements out.  Furthermore, when I asked him to change the wording in other portions of the statement, he refused, stating, "as I see it, that's how it happened."  I was in no way allowed to write my own statement.

12.  The investigators led me to believe that I had to sign the statement before leaving the interview.

*David E. Gwinn*
David E. Gwinn

Subscribed and sworn to before me

this 14th day of February, 1994.

*Moira K. Ricketts*
Notary Public

My Commission expires: 2/14/98

MOIRA K. RICKETTS
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires February 14, 1998

– 4 –

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
                                    )
MIDSHIPMEN LANCE BARNES,            )
PETER BARBOUR, JASON BERGER,        )
JOEL N. BARTIS, MARK D. BORAN,      )
DAVID A. CHLEBNIK, CHRISTOPHER      )
CLAIBORNE, JEFFREY D. CLARK,        )
DANIEL COLPO, JAMES NIXON SHERROD,  )
DAVID J. DERMODY, GARRY M.          )    C.A. No.: 94 0261 (HHG)
DEVINGER, SETH EVANS, JOHN          )
FORMOSO, HENRY FULTON III,          )
ROBERT E.F. GENTRY, MATTHEW         )
GIBSON, BRIAN D. GRAVES, DAVID E.   )
GWINN, JEFFREY GANTAR, KEVIN P.     )
HAMILTON, KEVIN W. HAVENS,          )
JUSTIN JONES-LANTZY, JASON          )
HEDBERG, DUNCAN N. INGRAHAM, JR.,   )
NEIL P. KEEGAN, PAUL R. KOCHER,     )
CHRISTOPHER KUZNIEWSKI,             )
D. WILSON MARKS, ERIC P.            )
MITCHELL, COLIN M. O'BRIEN,         )
EDWARD O'NEILL, ANDREW PAYNE,       )
DANIEL PIDGEON, TIMOTHY J. QUEEN,   )
SEAN W. QUINN, THOMAS ROSZKO,       )
STEVEN E. SCHAIRER, MARK E.         )
SCHNEIDER, BLAIR SOKOL,             )
LEWIS B. SIMS, ANDREW SOTERAKIS,    )
DERRICK TEFF, JEFFREY STEPANIC,     )
DAVID B. STOWERS, BRYAN SZELIGA,    )
JASON VAN MATRE, and                )
JAVIER ZULUAGA, USN,                )
                                    )
            Plaintiffs              )
                                    )
     v.                             )
                                    )
HONORABLE JOHN DALTON,              )
ADMIRAL FRANK B. KELSO, USN,        )
REAR ADMIRAL THOMAS C. LYNCH, USN,  )
REAR ADMIRAL RICHARD ALLEN, USN,    )
                                    )
            Defendants.             )
                                    )
```

AFFIDAVIT OF JASON HEDBERG

1.   I am over 18 years of age and am competent to testify to all matters set forth in this affidavit.  This affidavit is based on my personal knowledge of the matters set forth.

2.   I am a Midshipman First Class at the United States Naval Academy, scheduled to graduate and receive my commission on May 25, 1994.

3.   I am the captain of the Rugby team, of which I have been a member for four years.  I am two All-American Collegiate Rugby Players.

4.   In addition, I am a volunteer at the Special Olympics.

5.   In early September 1993, I received notice to meet the next day with the Navy Inspector General in a room in Alumni Hall.  Two people interviewed me: a female Commander in the Navy and a female civilian.

6.   They told me that they "knew" I had cheated.

7.   The investigators told me that I had no Fifth Amendment rights because this was an "administrative investigation."  I was told that if I pleaded the Fifth, I was just admitting my guilt.  I was also told, "everbody knows that people plead the 5th only when they are guilty."

8.   The investigators then told me that they knew I was just an unlucky bystander and that they were interested in my roommate, a football player.  They asked for any information I had about who had compromised the test.  They specifically asked

- 2 -

me for rumors, even if they were unsubstantiated.  In addition,
they asked me to speculate about other people's behavior.

9.  When I refused to give them the information they
wanted, they became angry.

10.  The investigators told me that if I lied to them,
I would be committing perjury and could go to jail.

11.  When I answered questions to the best of my
ability, the investigators accused me of lying and told me that I
"was just hurting myself."  The investigators told me it would be
much better if I would implicate myself and others.

12.  The investigators told me that when they forwarded
their report, they were going to put the midshipmen into
different categories.  Because I would not give then the answers
they wanted to hear, they said I would be placed in the group
with the rest of the "thieves and the liars" who did not have
"the guts to confess."

13.  After a while, one of the women left and was
replaced by a man, Mr. Leo who told me to imagine how my parents
would feel if I was kicked out of school for cheating.

14.  In all, the interrogation lasted four hours.  I
refused to sign the statement that was prepared for me because I
felt that it was inaccurate in a number of ways.  In addition, I
was told that since the interview was under oath, it did not
matter if I signed the statement.

15.  I have never been so scared, worried, and confused
as I was during that interrogation.

16.  A few months later, I was called in for another interview.  Once again, I was not advised of my right to remain silent or my right to have counsel present.

17.  During this second session, I was again threatened with charges of perjury and theft of government property.  This session lasted over two hours.


Jason Hedberg
_____


Subscribed and sworn to before me

this 14th day of February, 1994.


Notary Public

MOIRA K. RICKETTS
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires February 14, 1998

My Commission expires:  2/14/98
_____

- 4 -

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MIDSHIPMEN LANCE BARNES, et al. )
)
Plaintiffs, )        CA No. 94 0261 (HHG)
v. )
)
HONORABLE JOHN DALTON, SECRETARY )
OF THE NAVY, et al. )
)
Defendants. )

AFFIDAVIT OF
MIDSHIPMAN FIRST CLASS ERIC P. MITCHELL, USN

      1.    I am over 18 years of age and am competent to testify to all matters set forth in this affidavit.  This affidavit is based on my personal knowledge of the matters set forth herein.

      2.    I am a senior at the United States Naval Academy. On September 14, 1993, I was called out of my first period class and ordered to report to Alumni Hall to be interviewed by investigators from the Navy Inspector General.  I arrived at approximately 8:15 a.m.  When I arrived, I was met by an NIS agent, Debbie Reese, and a Navy IG officer, Commander McPartlin.

      3.    After a few brief moments of small talk, Commander McPartlin required me to take an oath.  He then asked me what I did the night before the EE 311 examination.  He did not provide me with my Article 31 rights, nor did he advise me that I could be represented by counsel.  In fact, he told me that this

interview was "an administrative fact-finding body" and that I
had "no rights whatever" and that I must answer his questions.

4.    In response to his question, and because of his
order, I answered his question in a very general way.  This
provoked an extremely violent reaction by Commander McPartlin.
He accused me, in a loud voice, of being a liar.  I told him I
was not a liar.  Then he said, "Okay, then you are a cheater" or
words to that effect.  I requested that Commander McPartlin treat
me with the respect I was showing him.  This caused him to become
even more abusive.  He jumped out of his chair and got right in
my face and suggested that I "get mad."  The implication was that
he wanted me to hit him.  I did not do so.

5.    Next Commander McPartlin explained that I was
going to be thrown out of the Naval Academy, so I had better be
prepared to start "flipping burgers."  He also told me that my
family would reject me when they learned about this
investigation.

6.    After about two hours, Commander McPartlin and Ms.
Reese left the room to prepare my statement.  When they came
back, Commander McPartlin told me to "read and sign it."  He did
not indicate that I could change it in any way -- only that I
must sign it.  I asked if I had a choice about signing the
statement and Commander McPartlin said I did not.  I did as I was
ordered.  The statement that I signed was incomplete and
inaccurate.  I was told by Ms. Reese that if I came the next day,
the statement I signed on September 14 would not be used for any

purpose.  I only signed it because I was ordered to do so and because I belived that I could think over the information in the statement provided to me over night and provide a new statement the next day.

7.  After returning to my company area, my company commander told me that the Navy IG was not satisfied with my statement.  I was told that if I went back and gave a second statement, the first statement would not be used against me in any way.

8.  The next day, I went back to Alumni Hall and met with Ms. Reese.  Again I was not advised of my right to remain silent or of my right to have an attorney present.  I was told that my  first statement, provided on September 14 would not be considered by the investigators.  I did not ask about my rights because I was told in Bancroft Hall that this was an administrative investigation and I did not have any of these rights.  I had also been told that those midshipmen who asserted their rights were being processed for conduct violations under midshipmen regulations or for violations of the Uniform Code of Military Justice.  Had I been permitted to remain silent, I would have done so.  Had I been advised of my right to counsel, I would have obtained the advice of counsel before providing any information to the investigators.

9.  Only at the end of the interview and after I had signed the September 15 statement was I told that my September 15

statement was going to be added to the statement I was ordered to sign on September 14, 1993.

This affidavit is complete and accurate to the best of my knowledge.

_Eric P. Mitchell_
Eric P. Mitchell
Midshipman First Class, USN

Subscribed and sworn before me this 14th day of February, 1994.

_Moira K. Ricketts_
Notary Public

My Commission expires: 2/14/98

MOIRA K. RICKETTS
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires February 14, 1998

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MIDSHIPMAN LANCE BARNES, <u>et al.</u>        )
                                             )
              Plaintiffs,                    )
                                             )
      v.                                     )
                                             )
HONORABLE JOHN DALTON,                       )
SECRETARY OF THE NAVY, <u>et al.</u>         )
                                             )
              Defendants.                    )

## <u>AFFIDAVIT OF SEAN W. QUINN</u>

1.    I am over 18 years of age and am competent to testify to all matters set forth in this affidavit.  This affidavit is based on my personal knowledge of the matters set forth herein.

2.    I am a Midshipman First Class at the United States Naval Academy, scheduled to graduate and receive my commission in May 1994.

3.    I am the Captain of the Tennis Team, of which I have been a member for three years.

4.    On August 17, 1993, I was ordered to report to Nimitz Hall to meet with Navy IG investigators.  When I arrived at the meeting, I was greeted by Ms. Deborah Reese and a Marine Corps Major whom I believe was named Hewitt.

5.    During this half-hour meeting, I was not advised of my right to remain silent nor of my right to counsel.

6.   I was asked what I knew about the EE 311 exam and specifically asked about what I knew about the involvement of other members of my company.

7.   A statement, in which indicated that I had no knowledge, was then drafted for my signature.  I signed this statement as directed.

8.   On September 22, 1993, I was removed from class and ordered to again meet with the IG investigators.  I was greeted with the accusation that the IG "knew" that I shared information with other people who had confessed.

9.   I told the investigators that I desired to remain silent and refused to answer the allegation.  In response, I was told that if I did not talk, I would be labeled "uncooperative" and that I could be charged for that offense.

10.   A second statement was prepared for my signature which indicated that I had information which later turned out to have been on the EE 311 exam.  In exchange for signing this statement, I was given a promise that the investigators would report that I had been cooperative.

11.   I was never advised of my right to remain silent or my right to counsel during this second meeting, which lasted about an hour.

12.   The next day or possibly two days later, I was again called to meet with the IG investigators.  Although I had already provided a statement, they continued to question me for

approximately 3-4 hours.  Again, I was not warned of my right to remain silent or my right to counsel during this interview.

13.  During this meeting, I was told that I had no choice but to talk and admit my wrongdoing.  During this interviews I was accused of lying in a harsh and unprofessional tone by the investigators.

14.  At the conclusion of this session, I was given another statement to sign.  Some of the information which was included in the statement was not accurate, but the investigators would not change it.  At first I refused to sign this statement, but eventually I signed it under protest because I felt I was being ordered to do so.  I did not sign this statement as an act of my own free will.

_Sean W. Quinn_
Sean W. Quinn

Subscribed and sworn to before me
this 14th day of February, 1994.

_Moira K. Ricketts_
Notary Public

My Commission expires: 2/14/98

MOIRA K. RICKETTS
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires February 14, 1998

- 3 -

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
                                    )
MIDSHIPMEN LANCE BARNES,             )
PETER BARBOUR, JASON BERGER,         )
JOEL N. BARTIS, MARK D. BORAN,       )
DAVID A. CHLEBNIK, CHRISTOPHER       )
CLAIBORNE, JEFFREY D. CLARK,         )
DANIEL COLPO, JAMES NIXON SHERROD,   )
DAVID J. DERMODY, GARRY M.           )    C.A. No.: 94 0261 (HHG)
DEVINGER, SETH EVANS, JOHN           )
FORMOSO, HENRY FULTON III,           )
ROBERT E.F. GENTRY, MATTHEW          )
GIBSON, BRIAN D. GRAVES, DAVID E.    )
GWINN, JEFFREY GANTAR, KEVIN P.      )
HAMILTON, KEVIN W. HAVENS,           )
JUSTIN JONES-LANTZY, JASON           )
HEDBERG, DUNCAN N. INGRAHAM, JR.,    )
NEIL P. KEEGAN, PAUL R. KOCHER,      )
CHRISTOPHER KUZNIEWSKI,              )
D. WILSON MARKS, ERIC P.             )
MITCHELL, COLIN M. O'BRIEN,          )
EDWARD O'NEILL, ANDREW PAYNE,        )
DANIEL PIDGEON, TIMOTHY J. QUEEN,    )
SEAN W. QUINN, THOMAS ROSZKO,        )
STEVEN E. SCHAIRER, MARK E.          )
SCHNEIDER, BLAIR SOKOL,              )
LEWIS B. SIMS, ANDREW SOTERAKIS,     )
DERRICK TEFF, JEFFREY STEPANIC,      )
DAVID B. STOWERS, BRYAN SZELIGA,     )
JASON VAN MATRE, and                 )
JAVIER ZULUAGA, USN,                 )
                                     )
          Plaintiffs                 )
                                     )
     v.                              )
                                     )
HONORABLE JOHN DALTON,               )
ADMIRAL FRANK B. KELSO, USN,         )
REAR ADMIRAL THOMAS C. LYNCH, USN,   )
REAR ADMIRAL RICHARD ALLEN, USN,     )
                                     )
          Defendants.                )
                                     )
```

AFFIDAVIT OF THOMAS E. ROSZKO

1.   I am over 18 years of age and am competent to testify to all matters set forth in this affidavit.  This affidavit is based on my personal knowledge of the matters set forth.

2.   I am a Midshipman First Class at the United States Naval Academy, scheduled to graduate and receive my commission on May 25, 1994.

3.   I have maintained a 3.08 grade point average over three and one half years at the Academy.  I have been on the Commandant's list every semester except one.  I have played Varsity Lacrosse for four years and was awarded the McLaughlin award for sportsmanship, dedication and courage.

4.  On August 17, 1993, I was called to meet with the Navy Inspector General.  Three people were present: Debbie Reese, an NIS agent, a Marine Corps Major, and Commander Paul McPartlin.

5.   The first thing they said to me was, "We know you had the test."

6.   I immediately asked them if I could have a lawyer. They told me that I had no right to an attorney.

7.   I asked if I could exercise my right to remain silent.  Again, I was told that I had no rights.  They informed that this was an administrative investigation and that I had no rights.

8.   They warned me that if I did not start talking, I would be court-martialed and separated from the academy.

9.   The interview lasted approximately three hours.  I asked 6-10 times during this interview if I could leave.  I was denied.

Eventually, I signed a statement that had been prepared for me.


Thomas E. Roszko
Thomas E. Roszko

Subscribed and sworn to before me

this 14th day of February, 1994.

Moira K. Ricketts
Notary Public

My Commission expires:  2/14/98

MOIRA K. RICKETTS
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires February 14, 1998

B

Exhibit B

FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEB 1 6 1994

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

MIDSHIPMAN LANCE BARNES, et al.   )
                                  )
          Plaintiffs,             )
                                  )    CA No. 94 0261 (HHG)
     v.                           )
                                  )
HONORABLE JOHN DALTON, SECRETARY  )
OF THE NAVY, et al.               )
                                  )
          Defendants.             )
                                  )

AFFIDAVIT OF
BRIGADIER GENERAL DAVID M. BRAHMS, USMC (RETIRED)

1.   I am over 18 years of age and am competent to testify to
all matters set forth in this affidavit.  This affidavit is based
on my personal knowledge of the matters set forth herein.

2.   I am a retired Brigadier General in the United States
Marine Corps.  I retired in 1988 after serving as an officer in the
Marine Corps for more than 25 years.  When I retired, I was the
Staff Judge Advocate to the Commandant of the United States Marine

1

Corps.  In this position, I was the senior lawyer in the United States Marine Corps.  I was responsible for providing legal advice on all military issues, including military justice and administrative law matters, to the Commandant of the Marine Corps.

3.   Prior to commencing my active duty service as a Marine Corps Officer in January of 1963, I completed my basic secondary education at Harvard College (Class of 1959) and Harvard Law School (Class of 1962).  Shortly thereafter, in April of 1963, I was admitted to practice law in the Commonwealth of Massachusetts.  In the fall of 1963, after finishing the comprehensive Marine Corps Basic Training Program, I spent some six weeks studying military criminal law at the Naval Justice School in Newport, Rhode Island.  Predicated thereupon, I was certified as a military trial/defense counsel competent to try courts-martial at all levels.  In 1969, I graduated (with honors) from the United States Army Judge Advocate School's Career Course – a full academic year course which offered, inter alia, in-depth study in the area of military justice.  The program has since been specially accredited to award a master of laws degree.  In 1977, I received the Master of Laws degree in Law, Psychiatry and Criminal Law (with highest honors) from the National Law School, George Washington University.  I attended that program under the auspices of the United States Marine Corps.

4.   During my active duty military service, I served as trial counsel (prosecutor), defense counsel, military judge (I was certified to perform such duties in the Summer of 1969).  In those capacities, I directly participated in the trial of more than 500

2

courts-martial cases (my best estimate). I also supervised and
oversaw military justice actions and provided advice to senior
commanders re military justice as the staff judge advocate (senior
lawyer) or deputy staff judge advocate of four different Marine
Corps field commands. During calendar years 1972-1973, I was the
principal Marine legal advisor to "Operation Homecoming", the
return of the Vietnam Prisoners of War. In this capacity, I was
intimately involved in the issues of criminal and moral
accountability relating to American servicemember's behavior while
in captivity. In my last years in active duty, I was specially
designated by the Commandant of the Marine Corps to oversee the
investigation of and military justice action in what became known
as the Marine Embassy Spy cases (i.e., Sergeant Clayton Lonetree,
et al.)

5.    Since retiring from the military in September of 1988, I
have been involved in the practice of law. A good deal of my
practice is in the area of military justice - providing advice and
representation to servicemembers facing military justice action or
aiding them to overturn or remove military justice
convictions/adjudications from their records. I also have since my
retirement served as a military law consultant. My efforts in this
regard included service as the technical adviser to the motion
picture, "A Few Good Men."

6.    In sum, I am well-acquainted by training and experience
with the Uniform Code of Military Justice (hereinafter "UCMJ") and
the requirements of Article 31 of that Code, which mandates that a

3

warning of the right against self-incrimination be given to persons
suspected of a military criminal offense.

7.    I am aware that the Naval Inspector General recently
conducted an investigation into allegations that a Naval Academy
Examination was compromised and cheating occurred with respect to
that examination.  It is understood that the midshipmen and women
suspected of offenses in violation of the Uniform Code of Military
Justice and interrogated in the course of that investigation were
not given a warning of their right against self-incrimination.  The
Inspector General has rationalized the determination not to so warn
midshipmen suspected of cheating, on the grounds that investigation
was considered "administrative" in nature and that "in the majority
of cases" courts-martials would not be pursued.  See paragraph 45
of the cited investigation.

8.    I find that conclusion inconsistent with the express
language of Article 31, UCMJ and frankly disingenuous.  Article
31(b), which prescribes the warning requirement, is by its terms
unequivocal and imperative:

> "No person subject to this chapter may
> interrogate, or request any statement from an
> accused or a person suspected of an offense
> without first informing him of the nature of
> the accusation and advising him that he does
> not have to make any statement regarding the
> offense of which he is accused or suspected
> and that any statement made by him may be used
> as evidence against him in a trial by court-
> martial."

This mandate to warn is not driven by the intended use of any
statement obtained.  There is no exception to the injunction to

4

warn, expressed or implied.  In this latter regard, I note that the statutory protections accorded to military suspects by Article 31, Uniform Code of Military Justice are broader than those offered by the Fifth Amendment to the United States Constitution.  This fact has long been recognized by the Department of the Navy.  Indeed the seminal regulation pertaining to investigations in the Department of the Navy, the Manual of the Judge Advocate General of the Navy (JAG INST 5800.7 also referred to as "JAGMAN") prescribes that a warning of rights will be provided to military persons "suspected of an offense, misconduct or improper performance of duty" even in the course of an investigation focused upon non-criminal, administrative matters.  Section 0213c JAGMAN.  In this latter regard, I am aware of no investigation while I was an officer in the Marine Corps, and certainly none while I was the senior lawyer in the Marine Corps, wherein a military commander consciously disregarded the statutory and constitutional rights of military personnel under their command in an effort to obtain information later used to separate the military member from the service.

9.   Finally, in my opinion, conduct of the nature described in the Navy Inspector General Report, to wit:  knowingly failing to advise a suspected military member of his or her rights under Article 31, constitutes a violation of the criminal proscription found in the Uniform Code of Military Justice at Article 98, 10 U.S.C. 898.  It is an offense punishable by court-martial.

MIDSHIPMAN LANCE BARNES, *et al.* vs. HONORABLE JOHN DALTON,
SECRETARY OF THE NAVY, *et al.*
CA No. 94 0261 (HHG)
AFFIDAVIT OF BRIGADIER GENERAL DAVID M. BRAHMS, USMC (RETIRED)
Continued

        This affidavit is complete and accurate to the best of my

knowledge.

                                        DAVID M. BRAHMS,
                                        Brigadier General, USMC (Ret.)

Subscribed and sworn to before me
this 15th day of February, 1994.

Notary Public

My Commission expires: *Dec 4 1996*

KATHLEEN M. MENARD
COMM. # 977287
Notary Public — California
SAN DIEGO COUNTY
My Comm. Expires M' 4, 1996

6

*Exhibit C*
*C.A. 94-0261*

## AFFIDAVIT OF LCDR J. E. KING, JAGC, USN

I was informed by the Legal Advisor to the Edney Paney that Professor Wasta was called before that panel to give basic foundation as to the tradition and use of "good gouge" at the U.S. Naval Academy. He also indicated that Professor Wasta had given the panel some insight on the permissible information that could be written on the midshipmen's 5 X 7 cards which they are allowed to take into the exams. Finally, the professor covered the recently changed rule about old exam files, the limitations on using them and the revised policy on maintaining company exam files.

On February 10, 1994, I contacted LCDR Scalzitti of the EE Department and requested that he appear at Midshipman Matthew Gibson's board to lay the foundation for the board on the "good gouge" rule, 5 x 7 card usage and the existence of exam files, if any. He put me on hold and said he had to clear it with his supervisor, Colonel Kendrick. He returned to the phone and said he had been directed not to talk to us (defense counsel) and not to testify. I reiterated that all I wanted was basic foundation and not any specific details about any midshipman. He adamantly stated that he would not cooperate.

On February 10, 1994, I called for Professor Wasta and was told he was out and I left my name and numbers. He did not return my call and early on the morning of February 14, I again called and left my name and number. I again left messages for Colonel Kendrick and Professor Wasta on 15 February and have received no response.

The above is true and correct.

J. E. King
15 February 1994

**FILED**

FEB 1 6 1994

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 1994 a copy of the foregoing Supplemental Memorandum in Support of Plaintiffs' Motion for a Temporary Restraining Order was delivered by the means indicated to:

John Bates, Esquire                                    By Hand
Office of the United States Attorney
    for the District of Columbia
555 4th Street, N.W.
Room 3130
Washington, D.C. 20001


                                        Charles W. Gittins